**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**WESTERN DIVISION**

**CHAZ D. PINKSTON**                                                                 **PLAINTIFF**

**v.**                                                           **CIVIL ACTION NO. 5:18-cv-103-MTP**

**PELICIA HALL, ET AL.**                                                        **DEFENDANTS**

## <u>ORDER</u>

THIS MATTER is before the Court on Defendants' Motion for Reconsideration [299] and Plaintiff's Motion for Leave to File a Surreply [305]. Having considered that parties' submissions and the applicable law, the Court finds that Plaintiff's Motion for Leave to File a Surreply [305] should be granted and that Defendants' Motion for Reconsideration [299] should be granted in part and denied in part.

## BACKGROUND

On October 1, 2018, Plaintiff Chaz Pinkston, proceeding *pro se* and *in forma pauperis*, filed this civil action pursuant to 42 U.S.C. § 1983. The allegations in Plaintiff's complaint occurred while he was incarcerated as a post-conviction inmate at the Wilkinson County Correctional facility ("WCCF"). Plaintiff's claims were clarified and amended by this testimony at the *Spears*[1] hearing. Plaintiff named forty-two Defendants and asserted claims concerning medical care, use of force, conditions of confinement, First Amendment rights, and the prison's administrative remedies program.

Defendants filed multiple Motions for Summary Judgment [183] [216] [223] [227], and on May 18, 2020, the Court entered an Opinion and Order [288] on these Motions. The Court

---

[1] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

1

dismissed all but the following claims: (1) Plaintiff's claims concerning the cleanliness of his cell asserted against Defendants Management & Training Corporation ("MTC"), Robert Marquardt, Robyn Williams, Jody Bradley, Gabriel Walker, Tonya Toomey, Terry Daniels, Justin Green, Karen Brown, John Gueho,[2] Delando Miles, and Bessie McKnight and (2) Plaintiff's First Amendment claim against Defendant Jody Bradley.

On August 10, 2020, the remaining Defendants filed the instant Motion [299] asking that the Court reconsider its Opinion and Order [288] and grant summary judgment in favor of Defendants Bradley, Marquardt, Williams, Walker, Toomey, Daniel, and MTC.  Plaintiff filed a Response [300], a Declaration [301] in opposition,[3] and a Memorandum Brief [302].  Thereafter, Defendants filed a Reply [304], and Plaintiff filed a Motion for Leave to File a Surreply [305], along with his Surreply [307] and a Declaration [306].

## STANDARDS

The Court's Opinion and Order [288] constitutes an interlocutory order under Fed. R. Civ. P. 54(b).  Thus, the Court "may reconsider and reverse [its ruling] any time before entering final judgment." *Millar v. Houghton*, 115 F.3d 348, 350 (5th Cir. 1997); *see also McClendon v. U.S.*, 892 F.3d 775, 781 (5th Cir. 2018).  Under Rule 54(b), a court may grant a party's motion to reconsider "for any reason it deems sufficient." *U.S. v. Renda*, 709 F.3d 472, 479 (5th Cir. 2013).  Such motion may be granted "even in the absence of new evidence or an intervening change in

---

[2] On May 26, 2020, Defendant MTC filed a Suggestion of Death [289] stating that Defendant John Gueho died on February 18, 2020, and thereafter, the Court dismissed Plaintiff's claims against Defendant Gueho pursuant to Fed. R. Civ. P. 25(a)(1).

[3] The Declaration [301] was docketed as a "Motion."  As the Declaration [301] does not request any relief and simply offers allegations and arguments in opposition to Defendants' Motion [299], the Court will deny the "Motion" but consider the document in its analysis of Defendants' Motion [299].

or clarification of substantive law." *Saqui v. Pride Cent. Am., LLC*, 595 F.3d 206, 201-11 (5th Cir. 2010). However, "considerations similar to those under Rules 59 and 60 inform the Court's analysis." *Dos Santos v. Bell Helicopter Textron, Inc.*, 651 F.Supp.2d 550, 553 (N.D. Tex. 2009). Such considerations include whether the movant is attempting to rehash its previous arguments or is attempting to raise new arguments without justification. *Id*.

Defendants request that the Court grant summary judgment in favor of Defendants Bradley, Marquardt, Williams, Walker, Toomey, Daniel, and MTC. Summary judgement will be granted when "the record indicates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). "The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir. 2000). The Court is not permitted to make credibility determinations or weigh the evidence. *See Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009) (citing *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2001)). When deciding whether a genuine issue of fact exists, "the court must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010).

However, the nonmoving party "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner*, 476 F.3d at 343 (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). In the absence of proof, the Court does not "assume that the nonmoving party could or would prove the necessary facts."

*Little*, 37 F.3d at 1075 (emphasis omitted). The nonmovant cannot survive a proper motion for summary judgment by resting on the allegations in his pleadings. *Isquith v. Middle South Utilities, Inc*., 847 F.2d 186, 199 (5th Cir. 1988); *see also Celotex*, 477 U.S. at 325-26. Instead, the nonmovant must present evidence sufficient to support a resolution of the factual issues in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

## ANALYSIS

### *Cleanliness of Cell*

In his complaint, as clarified at his *Spears* hearing, Plaintiff alleges that his cell was never cleaned and that there was dried blood, feces, and mildew on the walls.  Plaintiff also alleges that there was mold on the air vents and that the prison has spiders, gnats, and ants.  Plaintiff claims that Defendants MTC, Marquardt, Williams, Bradley, Walker, Toomey, Daniels, Green, Brown, Gueho, Miles, and McKnight were responsible for the conditions in his cell.  In support of their Motion for Summary Judgment [227], Defendants submitted a declaration from Defendant Green stating that prisoners are "provided with cleaning supplies on a regular basis to keep their cells in sanitary condition." *See* [227-6] at 2.

On the other hand, Plaintiff denied this assertion and stated that he was not provided cleaning supplies. *See* [266] at 12.  Viewing the facts in the light most favorable to Plaintiff, the Court denied summary judgment, finding that there were genuine disputes of material fact regarding the cleanliness of Plaintiff's cell.

The Court, however, noted that it was not clear what extent each Defendant was responsible for the alleged conditions in Plaintiff's cell, as no party addressed the issue in its

briefing.[4]  In their Motion to Reconsider [299], Defendants now ask the Court to consider each

Defendant's responsibility for the alleged conditions in Plaintiff's cell.  Defendants argue that

because of their personal involvement, four Defendants—Green, Miles, Brown, and McKnight—

are "the only individual Defendants against whom such a claim could possibly be asserted." *See*

[298] at 11.  Defendants point out that Defendant Green served as a captain responsible for the

long-term segregation unit where Plaintiff was housed, Defendant Miles served as a captain and

lieutenant responsible for this unit, Defendant Brown served as the unit manager, and Defendant

McKnight served as Plaintiff's case manager.  Defendants argue that the remaining

Defendants—MTC, Marquardt, Williams, Bradley, Walker, Toomey, and Daniels—are entitled

to summary judgment because these Defendants did not participate in the alleged wrongful

conduct.

It is well-settled that § 1983 does not "create supervisory or *respondeat superior*

liability." *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002).  "To state a cause of action under §

1983, the plaintiff must allege facts reflecting the defendants' participation in the alleged wrong,

specifying the personal involvement of each defendant." *Jolly v. Klien*, 923 F. Supp. 931, 943

(S.D. Tex. 1996) (citing *Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992)).  Thus,

supervisory prison officials may be liable for a § 1983 violation only if they either were

personally involved in the constitutional deprivation or if there is a "sufficient causal connection

---

[4] On a motion for summary judgment, the moving party bears the initial burden to demonstrate that there are no factual issues warranting trial.  "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007).  It is only after the moving party has discharged its initial burden that a responsive burden falls on the nonmoving party to come forth with evidence demonstrating that there is a genuine issue of fact warranting trial.

between the supervisor's wrongful conduct and the constitutional violation." *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Additionally, to establish liability against MTC, Plaintiff must establish (1) an official policy or custom, of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy or custom. *Rivera v. R.H. Indep. Sch. Dist.*, 349 F.3d 244, 247-49 (5th Cir. 2003).

Defendants Robert Marquardt and Robyn Williams

Defendant Marquardt is the president of MTC, and Defendant Williams serves as MTC's director of corrections. Both work in Centerville, Utah. According to Defendants, neither Marquardt nor Williams had any personal involvement in the condition of Plaintiff's cell. Plaintiff testified that he wrote Marquardt and Williams grievances and letters concerning all the conditions of his confinement, but these Defendants did not respond or correct the problems. Plaintiff admits that he never spoke to Marquardt, but asserts that he spoke to Williams on three occasions *See* [227-1] at 64; [266] at 13. Plaintiff asserts that he spoke to Williams about the use of force, adequacy of food, collective punishment, medical care, religious services, recreation, visitation, haircuts, educational and vocational programs, cell and zone sanitation, and clothing. *See* [266] at 13.

Plaintiff has not shown that Defendants Marquardt and Williams were personally involved in the alleged constitutional deprivation. The "mere failure to investigate or respond correctly to an inmate's written administrative complaints is not a basis for liability under § 1983. To the contrary, there is no constitutional right to an investigation or to a favorable response in reply to an administrative grievance and there is no due process right inherent in such a claim." *Campbell v. Cain*, 2016 WL 828786, at *4 (M.D. La. Feb. 11, 2016) (citing *Mahogany*

6

*v. Miller*, 252 Fed. Appx. 593, 595 (5th Cir. 2007)). "The fact Plaintiff wrote letters to the

warden and his family and friends made telephone calls which were not returned does not

demonstrate personal involvement by the warden in any alleged constitutional violations." *Ray v.*

*Wilson*, 2017 WL 9806929, at *4 (E.D. Tex. Oct. 17, 2017); *see also Hunt v. Barry Telford Unit*,

2017 WL 9285374, at *3 (E.D. Tex. Jan. 3, 2017); *Dilworth v. Box*, 53 F.3d 1281, 1995 WL

295885, at *1 (5th Cir. Apr. 20, 1995). Additionally, the fact that, on rare occasions, Plaintiff

complained to Williams about every aspect of prison life does not demonstrate personal

involvement on the part of Williams. The record does not demonstrate that Williams was both

"aware of facts from which the inference could be drawn that a substantial risk of serious harm

exists" and drew the inference. *Farmer v. Brennan*, 511 U.S. 825, 387, 838 (1994).

The Court finds that the Motion for Reconsideration [299] should be granted to the extent

Defendants request that Defendants Marquardt and Williams be granted summary judgment.

<u>Defendant Jody Bradley, Gabriel Walker, Tonya Toomey, Terry Daniels, and MTC</u>

Defendant Bradley served as the warden of WCCF until the end of 2018, Defendant

Walker served as the deputy warden of operations, Defendant Toomey served as the deputy

warden of programs, and Defendant Daniels served as chief of security. Defendants point out

that Plaintiff offered no testimony at his *Spears* hearing concerning the responsibility these

Defendants had over the cleanliness of his cell and simply stated in an Affidavit [266], filed in

response to Defendants' Motion for Summary Judgment [227], that these Defendants did not

supply him cleaning supplies. *See* [266] at 12.

In response to the Motion for Reconsideration [299], however, Plaintiff alleges that these

Defendants visited his unit and cell weekly. *See* [301] at 7; [302] at 10-11. Plaintiff alleges that

these Defendants saw and smelled the conditions in which he was living but failed to redress the

conditions.  Plaintiff's statements indicate that these Defendants, who included alleged policy makers,[5] were aware of the alleged inhumane conditions of his cell and approved of the conditions.  The Court finds that there remain genuine factual disputes as to Plaintiff's claim against Defendants Bradley, Walker, Toomey, Daniels, and MTC concerning the cleanliness of his cell.

Thus, the Court finds that the Motion for Reconsideration [299] should be denied to the extent Defendants request that Defendants Bradley, Walker, Toomey, Daniels, and MTC be granted summary judgment on Plaintiff's remaining condition-of-confinement claim.

***First Amendment***

Plaintiff alleges that he is a Jehovah's Witness and that Defendant Bradley would not allow him to receive religious literature or allow other Jehovah's Witnesses to come and study with him.  In his Motion for Summary Judgment [227], Bradley asserted that, during lockdown periods, prisoner movement is restricted and prisoners are not allowed to participate in visitation to ensure safety and security.  Bradley argued that prison officials have a legitimate penological interest in restricting inmate contact and movement during these volatile periods.  The Court found that there was a rational relationship between security and restricting Plaintiff from meeting and studying with Jehovah's Witness visitors, pointing out that "[a] prisoner's right to free exercise of his religion 'may be curtailed in order to achieve legitimate correctional goals or maintain prison security.'" *See* [288] at 42 (quoting *O'Lone v. Shabazz*, 482 U.S. 342, 349 (1987)).

---

[5] "When a final policy maker makes the relevant decision, and when that decision is within the sphere of the policy maker's final authority, the existence of a well-established, officially-adopted policy will not insulate the municipality from liability." *Bennett v. Pippin*, 74 F.3d 578, 586 (5th Cir. 1996).

Bradley, however, did not address Plaintiff's allegation that Bradley would not allow him to receive religious literature from the would-be visitors. The Court noted "[t]here might well be a legitimate penological interest in not allowing Plaintiff to receive religious literature at certain times or under certain circumstances, but Defendant has failed to present one." *See* [288] at 43. Thus, the Court determined that summary judgment was inappropriate on Plaintiff's claim that Bradley would not allow him to receive religious literature.

In the Motion for Reconsideration [299], Defendants argue that the Court misconstrued Plaintiff's allegations to include a claim for denying Plaintiff access to religious literature. According to Defendants, Plaintiff never alleged that anyone attempted to send him religious literature but were unable to do so because of interference from Bradley. Defendants also argue that even if Plaintiff asserted such a claim, he has failed to produce any evidence to support the claim. Defendants assert that there is no evidence that Plaintiff requested any religious literature, that Jehovah's Witnesses attempted to send Plaintiff literature, or that Bradley prevented Plaintiff from receiving religious literature.

During the *Spears* hearing, the following exchange occurred:

The Court:     So you wanted [Bradley] to allow other Jehovah Witnesses to come into the prison to study with you? Is that what you're saying?

Plaintiff:     Yes sir, Your Honor. And to receive literature.

*See* [227-1] at 88. Even if this bare-bones allegation is sufficient to state a claim, Plaintiff has failed to present any evidence supporting the claim. In response to the Motion for Reconsideration [299], Plaintiff focused on his allegations that Bradley would not allow him to meet and study with Jehovah's Witnesses. Plaintiff asserts that Jehovah's Witnesses came to the prison and attempted to study literature with him, but Bradley turned them away. *See* [302] at 16. Plaintiff also submitted a declaration from another inmate stating that he was allowed to meet

9

with a Muslim Imam, but Plaintiff was not allowed to meet with Jehovah's Witnesses. *See* [300-3]. This declaration, however, does not address the claim at issue, that Bradley would not allow Plaintiff to receive religious literature. As explained above, the Court previously found that there was a rational relationship between security and restricting Plaintiff from meeting and studying with Jehovah's Witness visitors under certain circumstances. *See* [288].

Concerning the absence of literature, Plaintiff asserts that during the entirety of his incarceration—at WCCF and *other facilities*—he has never received any literature from Jehovah's Witnesses. *See* [301] at 3. He also complains that literature from Jehovah's Witnesses is not available in the library or the chaplain's office. *Id*. at 5. These assertions do not demonstrate that Bradley prohibited Plaintiff from receiving literature (outside of prohibiting face-to-face meetings). Plaintiff does not describe when he requested literature, who attempted to provide literature, when that person attempted, or what Bradley did to prohibit the dissemination of literature. Plaintiff cannot rest upon mere allegations, but must set forth specific facts showing there is a genuine issue for trial by either submitting opposing evidentiary documents or referring to evidentiary documents already in the record which show the existence of a genuine issue of material fact. *Celotex*, 477 U.S. at 324-25.

The Court finds that the Motion for Reconsideration [299] should be granted to the extent Defendants request that Plaintiff's First Amendment claim against Defendant Bradley be dismissed.

IT IS, THEREFORE, ORDERED that:

1. Motion [301] is DENIED.

2. Plaintiff's Motion for Leave to File a Surreply [305] is GRANTED.

3. Defendants' Motion for Reconsideration [299] is GRANTED in part and DENIED in part.

4.  Plaintiff's claims against Defendants Robert Marquardt and Robyn Williams are
    DISMISSED with prejudice.

5.  Plaintiff's First Amendment claim against Defendant Jody Bradley is DISMISSED
    with prejudice.

6.  This action shall continue as to Plaintiff's claims against Defendants Jody Bradley,
    Gabriel Walker, Tonya Toomey, Terry Daniels, and MTC concerning the cleanliness
    of Plaintiff's cell.

SO ORDERED this the 12th day of November, 2020.

> s/Michael T. Parker
> UNITED STATES MAGISTRATE JUDGE