IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

CHAZ D. PINKSTON                                                   PLAINTIFF

v.                                                CIVIL ACTION NO. 5:18-cv-103-MTP

JODY BRADLEY, ET AL.                                       DEFENDANTS

**OPINION AND ORDER**

THIS MATTER is before the Court on Defendants' Motion for Summary Judgment [346]. Having considered the parties' submissions and the applicable law, the Court finds that the Motion [346] should be granted and that Plaintiff's remaining claims should be dismissed without prejudice.

**BACKGROUND**

On October 1, 2018, Plaintiff, a post-conviction inmate proceeding *pro se* and *in forma pauperis*, filed this action pursuant to 42 U.S.C. § 1983. Plaintiff's claims arose from events which allegedly occurred while he was incarcerated at the Wilkinson County Correctional Facility ("WCCF"). Plaintiff named forty-two Defendants and asserted several claims concerning a multitude of issues, including medical care, use of force, conditions of confinement, and First Amendment rights.

Defendants filed multiple motions for summary judgment prior to the expiration of the deadline to file dispositive motions. The claims that remain following the Court's rulings on the motions for summary judgment are those against Defendants Jody Bradley, Gabriel Walker, Tonya Toomey, Terry Daniels, Justin Green, Karen Brown, Delando Miles, Bessie McKnight, and Management and Training Corporation ("MTC") concerning the cleanliness of Plaintiff's cell. *See* Order [310].

On December 21, 2021, Defendants Bradley, Walker, Toomey, Daniel, and MTC filed a Motion for Leave to File Motion for Summary Judgment [340], in which they sought leave to file an out-of-time motion for summary judgment based on Plaintiff's alleged failure to exhaust his administrative remedies as to the remaining claims. On January 10, 2022, the Court granted these Defendants leave to file the motion, and on January 12, 2022, these Defendants filed the instant Motion for Summary Judgment [346]. On January 31, 2022, Plaintiff filed his Response [351] and a Declaration [352].

However, because there appeared to be confusion concerning the identity of the remaining Defendants at the time the Motion for Summary Judgment [346] was filed, the Court entered an Order [353] on February 7, 2022, providing Defendants Green, Brown, Miles, and McKnight an opportunity to join in the Motion for Summary Judgment [346]. The Court also gave Plaintiff an opportunity to file a response to any joinder filed by Defendants. On February 14, 2022, Defendants Green, Brown, Miles, and McKnight filed a Joinder [355] in the Motion for Summary Judgment [346], and on February 28, 2022, Plaintiff filed his Response [357].

## STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Where the burden of production at trial ultimately rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010) (citation and internal quotation marks omitted). The nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Id.* "An issue is material if its resolution could affect the outcome of the

action." *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010) (quoting *Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001)). "An issue is 'genuine' if the evidence is sufficient for a reasonable [fact-finder] to return a verdict for the nonmoving party." *Cuadra*, 626 F.3d at 812 (citation omitted).

The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009) (citing *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007)). When deciding whether a genuine fact issue exists, "the court must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club, Inc.*, 627 F.3d at 138. However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002) (citation omitted). Summary judgment is mandatory "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Brown v. Offshore Specialty Fabricators, Inc.*, 663 F.3d 759, 766 (5th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

## ANALYSIS

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires prisoners to exhaust any available administrative remedies prior to filing suit under 42 U.S.C. § 1983. "Whether a prisoner has exhausted administrative remedies is a mixed question of law and fact." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010). The United States Court of Appeals for the Fifth Circuit held that "[s]ince exhaustion is a threshold issue that courts must address to

determine whether litigation is being conducted in the right forum at the right time, . . . judges may resolve factual disputes concerning exhaustion without the participation of a jury." *Id*. at 272. Because exhaustion is an affirmative defense, Defendants bear the burden of demonstrating that Plaintiff failed to exhaust available administrative remedies. *Id*. at 266.

The Fifth Circuit takes "a strict approach" to the PLRA's exhaustion requirement. *Johnson v. Ford*, 261 Fed. Appx. 752, 755 (5th Cir. 2008) (citing *Days v. Johnson*, 322 F.3d 863, 866 (5th Cir. 2003)). A prisoner cannot satisfy the exhaustion requirement "by filing an untimely or otherwise procedurally defective administrative grievance or appeal" because "proper exhaustion of administrative remedies is necessary." *Woodford v. Ngo*, 548 U.S. 81, 83-84 (2006). It is not enough to merely initiate the grievance process or to put prison officials on notice of a complaint; the grievance process must be carried through to its conclusion. *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001).

Mississippi Code § 47-5-801 grants the Mississippi Department of Corrections ("MDOC") the authority to adopt an administrative review procedure at each of its correctional facilities. Pursuant to this statutory authority, the MDOC has set up an Administrative Remedy Program ("ARP") through which an inmate may seek formal review of a complaint relating to any aspect of his incarceration. *See* MISSISSIPPI DEPARTMENT OF CORRECTIONS HANDBOOK[1] at Ch. VIII.

The ARP is a two-step process. An inmate is required to submit his initial grievance or request, in writing, through the Inmate Legal Assistance Program ("ILAP") within thirty days of an alleged incident. If, after screening, the grievance or request is accepted into the ARP, an

---

[1] *See* http://www.mdoc.ms.gov/Inmate-Info/Pages/Inmate-Handbook.aspx. (Last visited March 1, 2022).

4

official will issue a First Step Response. If the inmate is unsatisfied with the First Step Response, he may continue to the Second Step by using ARP form ARP-2. *See* MISSISSIPPI DEPARTMENT OF CORRECTIONS HANDBOOK at Ch. VIII.

In support of their Motion for Summary Judgment [346], Defendants submitted an affidavit from Janice Williams, the ARP Coordinator at WCCF, dated December 20, 2021, along with Plaintiff's grievances relating to his incarceration at WCCF prior to October 1, 2018 (the date this action was filed) and the official responses. *See* [346-1]. The record demonstrates that on February 6, 2018, Plaintiff submitted a grievance alleging that MDOC and MTC were violating policies concerning numerous issues, including professional conduct, physical fitness, use of force, personnel training, security logs, restraints, use of chemical agents, discipline, segregation, grooming, food services, facility sanitation, personal hygiene, health care, and many others. *See* [346-1] at 7. Plaintiff requested a meeting with someone with authority over MDOC and MTC regarding these issues. *Id*. On February 12, 2018, Williams sent Plaintiff a letter informing him that his grievance had been rejected because it was unclear and because he did not specify any relief sought. *Id*. at 8. Pursuant to MDOC policy, Plaintiff had five days to resubmit his corrected grievance. *See* [346-2] at 4.

On February 21, 2018, Plaintiff submitted another grievance complaining about numerous policy violations. *See* [346-1] at 11-13. On March 2, 2018, MDOC's statewide ARP Director, Richard Pennington, sent Plaintiff a notice that his grievance had been rejected as untimely because he failed to submit it within five days of the prior rejection. *Id*. at 10.

On March 8, 2018, Plaintiff submitted a grievance complaining about several issues, including visitation, recreation, religious services, mail, clothing, hygiene, sanitation, and medical care. *Id*. at 15. That same day, ARP Clerk Sherry Rowe sent Plaintiff a letter advising

him that if his grievance contained more than one complaint, it would be rejected. *Id*. at 16. The letter also advised Plaintiff that the ARP does not accept grievances submitted on behalf of other inmates. *Id*. Rowe provided Plaintiff a five-day extension to submit a corrected grievance. *Id*. at 17.

On March 9, 2018, Plaintiff filed a grievance vaguely complaining about the "conditions of confinement," his "personal well-being," and his "constitutional guaranties." *Id*. at 18. On March 19, 2018, Rowe informed Plaintiff that his grievance had been rejected because his prior grievance submitted on February 21, 2018, concerning the same issues had been rejected. *Id*. at 19-20.

On April 2, 2018, submitted another grievance vaguely complaining about his conditions of confinement, cruel and unusual punishment, violations of due process, and denial of freedom of speech. *Id*. at 26. As relief, Plaintiff requested that several employees "be fired immediately." *Id*. On April 23, 2018, Pennington sent Plaintiff a notice informing him that his grievance had been rejected because the relief he requested was "[b]eyond the power of the ARP department to grant." *Id*. at 25.

On April 25, 2018, Plaintiff submitted a grievance again vaguely complaining about his conditions of confinement, cruel and unusual punishment, violations of due process, and denial of freedom of speech. *Id*. at 29. Plaintiff did not request any specific relief but asked that his grievance be allowed to complete the first and second steps of the ARP process. *Id*. On May 29, 2018, Pennington sent Plaintiff a notice informing him that his grievance had been rejected as untimely because he failed to submit it within five days of the March 19, 2018, rejection notice concerning his February 21, 2018, grievance. *Id*. at 28.

Defendants argue that Plaintiff's remaining claims should be dismissed because he failed to complete the ARP process and, thus, failed to exhaust his administrative remedies. An inmate may not simply initiate the grievance process, but must complete the process. *Wright*, 260 F.3d at 358. "[A] prisoner must complete the administrative review process in accordance with the applicable rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford*, 548 U.S. at 88. Additionally, an inmate cannot satisfy the exhaustion requirement by filing an untimely or otherwise defective grievance or appeal. *Id*. at 83-84. "Exhaustion is no longer left to the discretion of the district court, but it is mandatory." *Id*. at 85.

In his Response [351], Plaintiff argues that he exhausted his administrative remedies via his April 2, 2018, grievance. As previously mentioned, in this grievance, Plaintiff complained about his conditions of confinement, cruel and unusual punishment, violations of due process, and denial of freedom of speech and requested that several employees "be fired immediately." *See* [346-1] at 26. The grievance was rejected because the requested relief was "[b]eyond the power of the ARP department to grant." *Id*. at 25.[2]

Plaintiff argues that his grievance should not have been rejected for requesting that several employees "be fired immediately." According to Plaintiff, he was not provided an

---

[2] Defendants point out that, in addition to requesting relief beyond the power of the ARP department to grant, Plaintiff's April 2, 2018, grievance—like all the other relevant grievances—was unclear and contained multiple complaints in violation of MDOC policy. Indeed, MDOC policy states that a grievance may be rejected because an inmate "has requested a remedy for more than one incident (a multiple complaint)." *See* [346-2] at 3; [351-2] at 5. MDOC policy also states that an inmate must "briefly set out the basis for his/her claim," and the Inmate Handbook states that the "inmate should present as many facts as possible to answer all the questions who, what, when, where, and how concerning the incident." [346-2] at 4; [351-2] at 6; [346-3] at 1. The Fifth Circuit has held that grievances should provide prison officials fair notice of an inmate's specific complaints and the "time and opportunity to address [the] complaints internally." *Johnson v. Johnson*, 385 F.3d 503, 516 (5th Cir. 2004). The record demonstrates that Plaintiff's grievances contained multiple complaints and failed to provide fair notice of the specific allegations which form the basis of Plaintiff's remaining claims.

MDOC Inmate Handbook, which states that a grievance may be rejected if the "relief sought is beyond the power of MDOC to grant."[3]  Plaintiff asserts that he relied on MDOC policy, specifically Policy No. 20-08-01, not the Handbook. *See* [352] at 1.  Plaintiff submitted a copy of Policy No. 20-08-01 and states that it "has been in existence from 2018 to the present year of 2022." *Id*; [351-2].  Plaintiff argues that this policy does not limit the relief a prisoner may request and that seeking relief beyond the power of the ARP is not listed as a reason for rejecting a grievance. *See* [351] at 4-6.

However, Policy No. 20-08-01 specifically states that "[i]f a request is rejected, it must be for one of the following reasons, which will be noted on Form ARP-1: The relief is beyond the power of MDOC to grant . . . ." *See* [351-2] at 7; [346-2] at 3.  In fact, Plaintiff quotes this very language on page 5 of his Response [351].

The record, including the evidence submitted by Plaintiff, demonstrates that he failed to exhaust his available administrative remedies under the ARP established by MDOC.  Defendants point out that on March 11, 2021, the Fifth Circuit decided *Lewis v. Doe, I*, 840 Fed. Appx. 784 (5th Cir. 2021), an unpublished case addressing administrative exhaustion.  The facts and legal issues presented in *Lewis* are similar to those presented in this case.  In *Lewis*, an inmate submitted an administrative grievance requesting monetary damages and that criminal charges be filed against a prison official. *Lewis*, 840 Fed. Appx. at 785.  The grievance was rejected on the grounds that the ARP did not have the authority to grant the requested relief. *Id*.  When the inmate filed suit in federal court without completing the second step of the ARP process, the district court dismissed his complaint for failure to exhaust administrative remedies. *Id*.  The

---

[3] *See* http://www.mdoc.ms.gov/Inmate-Info/Pages/Inmate-Handbook.aspx. (Last visited March 1, 2022).

Fifth Circuit upheld the district court's dismissal, stating that even where an inmate seeks relief which is unavailable through the ARP, "the PLRA nonetheless requires the inmate to exhaust 'available remedies, whatever they may be'" *Id.* (quoting *Wright*, 260 F.3d at 358). The Fifth Circuit stated further that "Lewis's failure to exhaust is not excused by the fact that he chose to seek only relief that the ARP could not provide . . . ." *Id.*

Plaintiff argues that this Court should not rely on *Lewis* because it is an unpublished opinion. The Court recognizes that *Lewis* is an unpublished opinion and, thus, not binding precedent. The Court, however, finds that the Fifth Circuit's reasoning in *Lewis* is persuasive and supported by other binding authority and concludes that Plaintiff failed to exhaust his administrative remedies. *See Avelar-Oliva v. Barr*, 954 F.3d 757, 765 n.2 (5th Cir. 2020) ("Although unpublished decisions are not precedent, these decisions may be considered persuasive authority."); *Woodford*, 548 U.S. at 85 ("Exhaustion is no longer left to the discretion of the district court, but is mandatory."); *Booth v. Churner*, 532 U.S. 731, 734 (2001) (a prisoner must exhaust administrative remedies even where the relief sought cannot be granted by the administrative process).

Plaintiff also asserts that Janice Williams and Sherry Rowe informed him that he could file a lawsuit if his grievance was rejected for requesting relief beyond the power of ARP to grant. *See* [352] at 1. Thus, it appears that Plaintiff is arguing that his failure to exhaust should be excused. The Fifth Circuit's strict approach to exhaustion "does not absolutely foreclose the possibility that prison officials' statements concerning administrative remedies can render such remedies unavailable." *Dillon v. Rogers*, 596 F.3d 260, 268 (5th Cir. 2010).

> However, the defining question is whether a prisoner has a way to discover the procedural rules governing their grievance. When a prisoner has no means of verifying what prison officials have told him about the grievance process, incorrect statements by those officials could make remedies unavailable. Even where prison

staff misrepresent the grievance process, that process is not rendered unavailable where there is evidence that the prisoner actually knew about the process or reasonably should have known about the process.

*Garcia v. Hinojosa*, 2019 WL 2289584, at *3 (S.D. Tex. Feb. 4, 2019) (citing *Dillon*, 596 F.3d at 268; *Davis v. Fernandez*, 798 F.3d 290. 296 n.2 (5th Cir. 2015)).

The record establishes that Plaintiff knew or should have known that a rejection of his grievance did not excuse him from completing the ARP process. Policy No. 20-08-01—which Plaintiff admits he relied upon—states as follows: "If [the MDOC ARP Director] rejects the complaint, he/she will so advise the offender in writing. The offender will then have five days from the date the rejection memo is received to appeal this rejection through channels or to resubmit his corrected complaint (beginning with the First Step)." *See* [351-2] at 6. Additionally, after Plaintiff's April 2, 2018, grievance was rejected, Plaintiff submitted another grievance requesting that his grievance be allowed to complete the first and second steps of the ARP process. *Id*. at 29. Plaintiff's request shows that he was aware the rejection of his grievance had not rendered the ARP process complete. Because the grievance process was available to Plaintiff and he failed to complete the process, his remaining claims must be dismissed.

IT IS, THEREFORE, ORDERED that:

1. Defendants' Motion for Summary Judgment [346] is GRANTED.

2. Plaintiff's remaining claims are DISMISSED without prejudice.

3. A separate judgment in accordance with Federal Rule of Civil Procedure 58 will be filed herein.

SO ORDERED, this the 3rd day of March, 2022.

s/ Michael T. Parker<br>United States Magistrate Judge